IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

PITTSBURGH DIVISION

| | |
|---|---|
| KAREEM BLOUNT, | ) 1:22-CV-001040-RAL |
| Plaintiff | ) RICHARD A. LANZILLO |
| vs. | ) Chief United States Magistrate Judge |
| UNIT MANAGER ACKROM, et al., | ) MEMORANDUM OPINION ON |
| | ) DEFENDANTS' MOTION TO DISMISS |
| Defendants | ) AND PLAINTIFF'S MOTION TO AMEND |
| | ) ECF NOS. 15, 24 |

I. Introduction

Plaintiff Kareem Blount, an inmate incarcerated at the State Correctional Institution at Greene (SCI-Greene), initiated this *pro se* civil rights action by filing a civil complaint and a motion for leave to proceed *in forma pauperis* (IFP). ECF Nos. 1, 1-1. Blount claims that officials and employees of the Pennsylvania Department of Corrections (DOC) violated his constitutional rights as secured by the Eighth and Fourteenth Amendments by placing him in an unduly restrictive Intensive Management Unit (IMU) program. ECF No. 12. As Defendants, Blount has named DOC Secretary George Little and two officials at SCI-Greene: Unit Manager Ackrom and Facility Manager M. Zaken. *Id.* Blount seeks monetary and injunctive relief pursuant to 42 U.S.C. § 1983. *Id.*

Presently pending before the Court is Defendants' motion to dismiss. *See* ECF No. 15. Blount has filed a brief in opposition. *See* ECF No. 21. As such, this matter is ripe for disposition.[1]

II.   Background

   A. Pleading irregularities

Before recounting Blount's factual allegations, the Court notes that Blount has filed three separate pleadings. In his initial complaint, docketed at ECF No. 9, Blount describes a personal interaction that he had with Defendant Ackrom in which he challenged various aspects of the IMU program. In his amended complaint, docketed at ECF No. 12, Blount provides general details about the IMU program but fails to include facts pertaining to his own placement in that program (such as the conversation with Ackrom). Finally, in conjunction with a motion to amend, *see* ECF No. 24, Blount submitted another proposed complaint – his third – that appears to simply consolidate the factual allegations in the prior two pleadings into a single, integrated document. *See* ECF No. 24-1.

As a matter of procedure, the operative pleading is the amended complaint filed at ECF No. 12. Because Blount filed that amendment within 21 days after service, the Federal Rules of Civil Procedure permitted him to amend his pleading without seeking leave of court. *See* Fed. R. Civ. P. 15(a)(1)(A) (permitting a single amendment as a matter of course within 21 days of service). However, that document does not "stand[] by itself as an adequate complaint without reference to the complaint already filed." *Williams v. Ferdarko*, 2018 WL 3653272, at *1 n. 1 (W.D. Pa. Aug. 1, 2018) (quoting *Young v. Keohane*, 809 F.Supp. 1185, 1189 (M.D. Pa. 1992)).

---

[1] The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge to conduct all proceedings in this case, including the entry of final judgment, as authorized by 28 U.S.C. § 636.

*See also Joey's Auto Repair & Body Shop v. Fayette County*, 2018 WL 2022081, at *1 (W.D. Pa. May 1, 2018) (noting that "[a]n amended complaint 'supersedes the original and renders it of no legal effect.'") (quoting *West Run Student Hous. Assocs., LLC v. Huntingdon Natl. Bank*, 712 F.3d 165, 171 (3d Cir. 2013)). Rather, as discussed above, Blount's amended complaint lacks personal factual allegations and can only be contextualized in conjunction with his prior filing. This type of pleading is procedurally improper. *Williams*, 2018 WL 3653272, at *1 n. 1 (noting that an amended complaint "must be complete in all respects"). Matters are further complicated by Blount's attempt to file a second amended complaint that cures the procedural deficiencies in his prior two pleadings but does not attempt to remedy the factual deficiencies pinpointed in Defendants' motion to dismiss.

For present purposes, the Court is mindful that, because Blount is proceeding *pro se*, a certain degree of procedural imprecision should be overlooked. *Haines*, 404 U.S. at 520-521 (*pro se* pleadings are held to "less stringent standards than formal pleadings drafted by lawyers"). The Court also finds that Blount's allegations, as pled to date, collectively fail to state a claim. Consequently, the Court will consider all three of Blount's pleadings in evaluating the viability of his claims and resolving the pending motion.

    B. Facts

As noted above, Blount's claims in the instant action center on his placement in the IMU at SCI-Greene. By way of background, the exhibits attached to Blount's pleadings describe the IMU as a program designed to help inmates struggling with anger management gain the "skills necessary to transition to a Step-Down Unit (SDU) and subsequently to General Population (GP)." ECF No. 12-2 at p. 1. The program consists of "a progressive six phase system" through which inmates advance based on their behavior and ability to adjust under reduced levels of

supervision. ECF No. 12-1 at p. 1. The first phase, phase six, lasts a minimum of thirty days. *Id.* Phases five, four, and three last a minimum of nine months each. *Id.* at 1-2. Phase two lasts a minimum of eighth months, and the final phase, phase one, lasts a minimum of one year. *Id.* at 2.

It is unclear when Blount entered the IMU. However, on December 22, 2021, Blount approached Ackrom "regarding the length of time that's needed to complete the [IMU] Program." ECF No. 9 ¶ 1. Ackrom informed Blount that the IMU "is a three year program with six (6) phases and each phase is 9 months in duration." *Id.* Citing an article written by Christian Conte, PH.D., a licensed psychologist and the creator of the anger-management paradigm upon which the IMU program is based, Blount argued to Ackrom that each phase of the IMU program should be only "3-6 months in duration." ECF No. 9 ¶ 2. Ackrom responded: "9 months is what you will be doing in each phase. I don't know what else to tell you." ECF No. 9 ¶ 3.

Blount filed a grievance, arguing that the temporal difference between the IMU program and Dr. Conte's recommendation was "illegal" and would result in "mental health deterioration" because of the prolonged time spent in restricted housing. ECF No. 12 ¶ 10. Blount's grievance was denied at each stage, with Defendant Zaken upholding the denial at the facility level and Defendant Little affirming the denial on final appeal. ECF No. 9 ¶¶ 21-23.

Notably, none of Blount's pleadings provide any factual details regarding his own placement in the IMU. He does not indicate when he was placed in the IMU, how long he has been there, or how far he has progressed through the program. Nor has Blount pled any facts from which it might be inferred that his placement has impacted his mental or physical health. Instead, he generally avers that prolonged isolation in a program such as the IMU might subject him to future harm "by unnecessarily placing [him] into isolation for prolonged periods of time

despite clear evidence in numerous cases, that such conditions pose risk by denying [him] adequate mental health care."[2] ECF No. 9 ¶ 6.

III. Standard of Review

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). In deciding a motion to dismiss, the court is not opining on whether the plaintiff will be likely to prevail on the merits; rather, the plaintiff must only present factual allegations sufficient "to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (citing 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1216, pp. 235-236 (3d ed. 2004)). *See also Ashcroft v. Iqbal*, 556 U.S. 662 (2009)). A complaint should only be dismissed pursuant to Rule 12 (b)(6) if it fails to allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570 (rejecting the traditional 12 (b)(6) standard established in *Conley v. Gibson*, 355 U.S. 41 (1957)). In making this determination, the court must accept as true all well-pled factual allegations in the complaint and views them in a light most favorable to the plaintiff. *U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002).

While a complaint does not need detailed factual allegations to survive a motion to dismiss, a complaint must provide more than labels and conclusions. *Twombly*, 550 U.S. at 555. A "formulaic recitation of the elements of a cause of action will not do." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Moreover, a court need not accept inferences drawn by a plaintiff if they are unsupported by the facts as set forth in the complaint. *See California Pub.*

---

[2] Notably, while Blount generally alleges that he suffers from intellectual disabilities that affect his communication, cognitive functioning, social skills, personal independence, and school or work functioning, he concedes that he does not suffer from a serious mental illness. ECF No. 12 ¶¶ 7-9.

*Employee Ret. Sys. v. The Chubb Corp.*, 394 F.3d 126, 143 (3d Cir. 2004) (citing *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997)). Nor must the Court accept legal conclusions disguised as factual allegations. *Twombly*, 550 U.S. at 555 (citing *Papasan*, 478 U.S. at 286). *See also McTernan v. City of York, Pennsylvania*, 577 F.3d 521, 531 (3d Cir. 2009) ("The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").

Expounding on the *Twombly/Iqbal* line of cases, the Third Circuit has articulated the following three-step approach:

> First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'

*Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011) (quoting *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010)). This determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

Finally, because Plaintiff is proceeding pro se, the allegations in the complaint must be held to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520-521 (1972). If the court can reasonably read a pro se litigant's pleadings to state a valid claim upon which relief could be granted, it should do so despite the litigant's failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or unfamiliarity with pleading requirements. *Boag v. MacDougall*, 454 U.S. 364

(1982); *United States ex rel. Montgomery v. Bierley*, 141 F.2d 552, 555 (3d Cir. 1969) (petition prepared by a prisoner may be inartfully drawn and should be read "with a measure of tolerance").

IV. Analysis

Blount contends that the IMU program violates his constitutional rights under both the Eighth and Fourteenth Amendments. Each claim will be addressed in turn.

A. Deliberate indifference

Blount first contends that the conditions of confinement in the IMU violate the Eighth Amendment's prohibition against cruel and unusual punishment. The United States Supreme Court has "interpreted this prohibition ... to impose affirmative duties on prison officials to 'provide humane conditions of confinement.'" *Young v. Martin*, 801 F.3d 172, 177 (3d Cir. 2015) (quoting *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). To succeed, Blount must satisfy both an objective and a subjective element of the claim. First, he must establish that the Defendants' conduct was "objectively harmful enough or sufficiently serious to violate the Constitution." *Ricks v. Shover*, 891 F.3d 468, 473 (3d Cir. 2018) (internal citations omitted). To meet the subjective component of this claim, Blount must show that the Defendants were deliberately indifferent to those conditions by acting with a reckless disregard of a known risk of harm. *Wilson v. Seiter*, 501 U.S. 294, 298-303 (1991); *Watson v. Sec'y Penn. Dep't of Corr.*, 567 Fed. Appx 75, 79 (3d Cir. 2014). In other words, "the [prison] official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw that inference." *Farmer*, 511 U.S. at 837.

There is no question that unduly prolonged incarceration in solitary confinement "can cause severe and traumatic psychological damage, including anxiety, panic, paranoia,

7

depression, post-traumatic stress disorder, psychosis, and even a disintegration of the basic sense of self identity." *Palakovic v. Wetzel*, 854 F.3d 209, 225-26 (3d Cir. 2017). *See also Johnston v. Wetzel*, 431 F.Supp.3d 666, 677 (W.D. Pa. 2019) ("The detrimental effects of prolonged solitary confinement on prisoners have been well documented."). This is because prolonged solitary confinement may deprive an inmate of such basic human needs as "exercise, sleep, social contact and interaction, and environmental stimulation." *Johnston*, 431 F.Supp.3d at 678 (citing *Wilson v. Seiter*, 501 U.S. 294, 304 (1991)).

On the other hand, reasonable periods of isolation "may be a necessary tool of prison discipline." *Johnson v. Wetzel*, 209 F.Supp.3d 766, 777 (M.D. Pa. 2016) (citing *Young v. Quinlan*, 960 F.2d 351, 364 (3d Cir. 1992)). *See also Johnston*, 431 F.Supp.3d at 679 (noting that "solitary confinement does not, in itself, violate the Constitution") (internal quotation omitted). In determining whether a particular confinement violates the constitution, courts look to both the duration of the solitary confinement and the unique conditions of that confinement. *See Wayne v. Clark*, 2022 WL 17993131, at *8 (E.D. Pa. Dec. 29, 2022) (evaluating the "conditions of confinement taken together with the length of [the inmate's] placement"). This is a totality of the circumstances analysis. *McClure v. Haste*, 820 Fed. Appx. 125, 128 (3d Cir. 2020). Among the most common factors identified by courts in this Circuit are: the amount of time the inmate is confined in his cell each day; the size of the cell; the extent to which daily activities are confined to the cell; how often the inmate can leave the cell for activities such as exercise and showering; whether the inmate can entertain physical visitors or use a telephone or tablet to contact friends and family; whether the inmate can move through program phases with good behavior to earn more privileges; and the extent to which the inmate has access to adequate medical and mental health care. *See, e.g., Porter v. Pennsylvania Department of Corrections*,

974 F.3d 431, 441 (3d Cir. 2020); *Peterkin v. Jeffes*, 855 F.2d 1021, 1022 (3d Cir. 1988); *Batchelor v. Little*, 2022 WL 16749039 (E.D. Pa. Nov. 7, 2022).

Applying these principles to the instant case, the Court concludes that Blount has failed to plead facts to demonstrate a plausible entitlement to relief. While he generally alleges that he has been placed in isolation "for prolonged periods of time," he has omitted such basic facts as the duration of his confinement in the IMU, the restrictions applicable to inmates in that unit, the privileges denied inmates in that unit, the physical conditions of his confinement, and whether he has been able to successfully advance to less restrictive phases of the program through compliance and good behavior. In the absence of such foundational facts, Blount cannot establish that the IMU's restrictions satisfy the factors outlined above. Blount's claim will be dismissed, however, without prejudice to his ability to attempt to replead his claim to cure the deficiencies identified in this opinion.

B. Due process

The Fourteenth Amendment of the United States Constitution provides that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law." The United States Supreme Court has mandated a two-part analysis of Fourteenth Amendment procedural due process claims. *Ingraham v. Wright*, 430 U.S. 651, 672 (1977). First, the reviewing court must determine "whether the asserted individual interests are encompassed within the . . . protection of 'life, liberty or property.'" *Id.* If a protected interest is implicated, the court must "decide what procedures constitute 'due process of law.'" *Id.* If no protected interest is implicated, however, then "it is unnecessary to analyze what procedures were followed when an alleged deprivation of an interest occurred." *Harris v. Hines*, 2017 WL 4119743, at *5 (M.D. Pa. Sept. 18, 2017).

9

Although Blount references the due process clause in his original complaint, none of his various pleadings allege any facts to support this claim. He does not allege facts from which the Court can determine whether he has a protected liberty or property interest triggering his right to due process or, assuming he has such an interest, whether the process afforded to him comports with constitutional requirements. Given these omissions, it is unclear whether Blount still intends to pursue a due process claim. For present purposes, this claim will also be dismissed, without prejudice, for failure to state a claim.

V.     Leave to Amend

The Third Circuit has instructed that if a civil rights complaint is vulnerable to dismissal for failure to state a claim, the Court should permit a curative amendment, unless an amendment would be inequitable or futile. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002). This instruction is equally applicable to *pro se* litigants and those represented by counsel. *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004). In this case, although Blount has already filed several amendments, he has not had the opportunity to file a curative amendment in response to specific deficiencies identified in a motion to dismiss. Consequently, the Court will permit him to file a curative amendment, if he wishes, within thirty days of the filing of this Memorandum Opinion. Failure to do so will result in a final order dismissing this case, with prejudice, for the reasons set forth herein.

VI.    Conclusion

For the foregoing reasons, Defendants' motion to dismiss [ECF No. 15] is granted. Blount's complaint is dismissed, without prejudice. If Blount wishes to file an amended

complaint, he may do so on or before October 21, 2023.[3] Failure to file an amended complaint on or before that date will result in a final order dismissing this action, with prejudice.

RICHARD A. LANZILLO<br>
Chief United States Magistrate Judge

Dated:  September 25, 2023

---

[3] In the meantime, his motion to amend at ECF No. 24 is denied as moot.