IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

PITTSBURGH DIVISION

| | |
|---|---|
| KAREEM BLOUNT, | 2:22-CV-001040-RAL |
| Plaintiff | RICHARD A. LANZILLO<br>Chief United States Magistrate Judge |
| vs. | |
| UNIT MANAGER ACKROM, et al., | MEMORANDUM OPINION ON<br>DEFENDANTS' MOTION TO DISMISS |
| Defendants | |
| | ECF NO. 31 |

I.   Introduction

Plaintiff Kareem Blount, an inmate incarcerated at the State Correctional Institution at Greene (SCI-Greene), initiated this *pro se* civil rights action by filing a complaint and a motion for leave to proceed *in forma pauperis* (IFP). ECF Nos. 1, 1-1. In his Amended Complaint – the currently operative pleading – Blount claims that officials and employees of the Pennsylvania Department of Corrections (DOC) violated his constitutional rights as secured by the Eighth and Fourteenth Amendments by placing him in an unduly restrictive Intensive Management Unit (IMU) program. ECF No. 30. As Defendants, Blount has named former DOC Secretary George Little and two officials at SCI-Greene: Unit Manager Ackrom and Facility Manager M. Zaken. *Id.* Blount seeks monetary and injunctive relief pursuant to 42 U.S.C. § 1983. *Id.*

Earlier in this litigation, Defendants moved to dismiss Blount's original complaint based on his failure to plead facts demonstrating a plausible entitlement to relief. ECF No. 15. The

Court granted the motion after concluding that Blount "ha[d] omitted such basic facts as the duration of his confinement in the IMU, the restrictions applicable to inmates in that unit, the privileges denied inmates in that unit, the physical conditions of his confinement, and whether he has been able to successfully advance to less restrictive phases of the program through compliance and good behavior." ECF No. 27 at p. 9. The Court further held that Blount had failed to allege facts "from which the Court [could] determine whether he has a protected liberty or property interest" for purposes of his due process claim. *Id.* at p. 10. Noting that Blount had not yet "had the opportunity to file a curative amendment in response to specific deficiencies identified in a motion to dismiss," the Court offered him the opportunity to file a curative amendment. *Id.* Blount filed his Amended Complaint shortly thereafter.

Presently pending before the Court is Defendants' second motion to dismiss. *See* ECF No. 31. Blount has filed a brief in opposition. *See* ECF No. 34. As such, the motion is ripe for disposition.[1]

II. Background

Blount's claims center on his placement in the IMU, a program implemented by the DOC to help inmates struggling with anger management gain the "skills necessary to transition to a Step-Down Unit (SDU) and subsequently to General Population (GP)." ECF No. 25 at p. 3. The program consists of "a progressive six phase system" through which inmates advance based on their behavior and ability to adjust under reduced levels of supervision. *Id.* at pp. 3-4. The first phase, phase six, lasts a minimum of thirty days. *Id.* Phases five, four, and three last a minimum

---

[1] The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge to conduct all proceedings in this case, including the entry of final judgment, as authorized by 28 U.S.C. § 636.

of nine months each. *Id.* at 1-2. Phase two lasts a minimum of eighth months, and the final phase, phase one, lasts a minimum of one year. *Id.* at 2.

Blount's placement in the IMU stemmed from a misconduct that he received for assaulting an inmate while incarcerated at SCI-Mahoney. ECF No. 30 ¶ 3. After Blount served a 90-day disciplinary sentence in the Restricted Housing Unit (RHU), the prison's Program Review Committee (PRC) met with him on July 30, 2021, and notified him that he had been placed on the Restricted Release List (RRL), a designation for incarcerated individuals with a history of assaulting staff and other inmates. *Id.* ¶ 5. Placement on the RRL allows the DOC to hold an inmate "in indefinite solitary confinement in the RHU" under conditions of "severely restricted movement, almost no educational or rehabilitative programming, no meaning[ful] or constructive use of time," and "perpetual [confinement] in conditions that are debilitating and inhumane." *Id.* ¶ 25. Blount unsuccessfully appealed his placement on the RRL to both the facility manager of SCI-Mahoney and the Chief Hearing Examiner for the DOC. *Id.* ¶ 6.

On November 23, 2021, the DOC transferred Blount to SCI-Greene and placed him in the IMU. *Id.* About a month later, Blount spoke with Ackrom "regarding the length of time that's needed to complete this [IMU] Program." ECF No. 30 ¶ 8. Ackrom informed Blount that the IMU "is a three year Program with six (6) phases and each phase is nine (9) months in duration." *Id.* Citing an article written by a licensed psychologist, Christian Conte, Blount argued to Ackrom that each phase of the IMU program should be only "3-6 months in duration" rather than nine. *Id.* ¶ 9. Ackrom responded: "9 months is what you will be doing in each phase. I don't know what else to tell you." *Id.* ¶ 10.

On December 27, 2021, Blount filed a grievance in which he argued that the "9 month long duration in each phases that Plaintiff [was] being told he must complete [was] in stark

contrast to the I.M.U. Policy." *Id.* ¶ 11.  Blount's grievance was denied at each stage, with Defendant Zaken upholding the denial at the facility level and Defendant Little affirming the denial on final appeal.  ECF No. 25 at p. 4.

Since being placed on the RRL, Blount's custody status has been reviewed every 90 days by the PRC – including Defendants Ackrom and Zaken – to determine whether continued placement in restrictive custody is appropriate.  *Id.* ¶¶ 41-42.  Blount acknowledges that the PRC can recommend his removal from the RRL, but alleges that the PRC meetings are perfunctory in nature and "routinely decided without any real consideration of Plaintiff's circumstances." *Id.* ¶¶ 41-43.  He also states that he has "never attended a PRC review where he was permitted or otherwise able to present his views, advocate on his own behalf or otherwise contest his RRL status." *Id.* ¶ 47.

In addition to quarterly PRC meetings, Blount's placement on the RRL is reviewed annually by a group of DOC administrators that includes his "Unit Manager, Majors, CCPM, DSCS, DSFM, Superintendent, RDS, and the EDSI." *Id.* ¶ 30.  A "vote sheet" is circulated among those individuals so that each can indicate whether he or she believes that Blount should be removed from the program.  *Id.* ¶ 27.  The final decision on removal or continuation in the program is then made by the DOC's Executive Deputy Secretary for Institutional Operations, a non-Defendant.  *Id.* ¶ 28.

While in the IMU, Blount maintains that he has been subjected to "deprivations and inhumane treatment and restrictions that are significantly more severe than those in general population." ECF No. 30 ¶ 54.  Among other things, he contends that he is confined to a seven by twelve-foot cell for 22 hours a day, served low quality food, restricted from making most commissary purchases, and forced to take meals alone in his cell.  *Id.*  He is forbidden from

4

talking to other inmates and denied "most normal human interactions" as well as "all sensory input from external stimuli." *Id.* He is also unable to have any physical contact with his family. *Id.* Finally, he claims that he is denied all educational, rehabilitative, vocational, and religious services. *Id.* As a result, he states that he suffers from severe stress, anxiety, insomnia, depression, migraine headaches, eyesight deterioration, post-traumatic stress disorder, confusion and disorientation, muscle loss and joint deterioration, panic attacks, loss of concentration, back and nerve pain, memory loss, hallucinations, and many other symptoms. *Id.* ¶ 57.

Based on the foregoing, Blount maintains that Defendants violated his constitutional right to be free from cruel and unusual punishment by subjecting him to inhumane conditions of confinement and displayed deliberate indifference to his mental and physical health. *Id.* ¶¶ 77-84. He also alleges that his continued placement on the RRL and confinement in the IMU without a meaningful opportunity to challenge those designations violates his right to due process. *Id.* ¶¶ 71-76. Blount seeks declaratory, injunctive, and monetary relief. *Id.* at pp. 21-22.

III. Standard of Review

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). In deciding a motion to dismiss, the court is not opining on whether the plaintiff will be likely to prevail on the merits; rather, the plaintiff must only present factual allegations sufficient "to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (citing 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1216, pp. 235-236 (3d ed. 2004)). *See also Ashcroft v. Iqbal*, 556 U.S. 662 (2009)). A complaint should only be dismissed pursuant to Rule 12 (b)(6) if it fails to allege "enough facts to state a claim to relief that is

plausible on its face." *Twombly*, 550 U.S. at 570 (rejecting the traditional 12 (b)(6) standard established in *Conley v. Gibson*, 355 U.S. 41 (1957)). In making this determination, the court must accept as true all well-pled factual allegations in the complaint and views them in a light most favorable to the plaintiff. *U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002).

While a complaint does not need detailed factual allegations to survive a motion to dismiss, a complaint must provide more than labels and conclusions. *Twombly*, 550 U.S. at 555. A "formulaic recitation of the elements of a cause of action will not do." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Moreover, a court need not accept inferences drawn by a plaintiff if they are unsupported by the facts as set forth in the complaint. *See California Pub. Employee Ret. Sys. v. The Chubb Corp.*, 394 F.3d 126, 143 (3d Cir. 2004) (citing *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997)). Nor must the Court accept legal conclusions disguised as factual allegations. *Twombly*, 550 U.S. at 555 (citing *Papasan*, 478 U.S. at 286). *See also McTernan v. City of York, Pennsylvania*, 577 F.3d 521, 531 (3d Cir. 2009) ("The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").

Expounding on the *Twombly/Iqbal* line of cases, the Third Circuit has articulated the following three-step approach:

> First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'

*Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011) (quoting *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010)). This determination is "a context-specific

task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

Finally, because Plaintiff is proceeding pro se, the allegations in the complaint must be held to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520-521 (1972). If the court can reasonably read a pro se litigant's pleadings to state a valid claim upon which relief could be granted, it should do so despite the litigant's failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or unfamiliarity with pleading requirements. *Boag v. MacDougall*, 454 U.S. 364 (1982); *United States ex rel. Montgomery v. Bierley*, 141 F.2d 552, 555 (3d Cir. 1969) (petition prepared by a prisoner may be inartfully drawn and should be read "with a measure of tolerance").

IV. Analysis

Blount contends that the IMU program violates his constitutional rights under both the Eighth and Fourteenth Amendments. Each claim will be addressed in turn.

A. Deliberate indifference/cruel and unusual punishment

Blount first contends that the conditions of confinement in the IMU violate the Eighth Amendment's prohibition against cruel and unusual punishment. The United States Supreme Court has "interpreted this prohibition ... to impose affirmative duties on prison officials to 'provide humane conditions of confinement.'" *Young v. Martin*, 801 F.3d 172, 177 (3d Cir. 2015) (quoting *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). To succeed, Blount must satisfy both an objective and a subjective element of the claim. First, he must establish that the Defendants' conduct was "objectively harmful enough or sufficiently serious to violate the Constitution." *Ricks v. Shover*, 891 F.3d 468, 473 (3d Cir. 2018) (internal citations omitted). To

meet the subjective component of this claim, Blount must show that the Defendants were deliberately indifferent to those conditions by acting with a reckless disregard of a known risk of harm. *Wilson v. Seiter*, 501 U.S. 294, 298-303 (1991); *Watson v. Sec'y Penn. Dep't of Corr.*, 567 Fed. Appx 75, 79 (3d Cir. 2014). In other words, "the [prison] official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw that inference." *Farmer*, 511 U.S. at 837.

There is no question that unduly prolonged incarceration in solitary confinement "can cause severe and traumatic psychological damage, including anxiety, panic, paranoia, depression, post-traumatic stress disorder, psychosis, and even a disintegration of the basic sense of self identity." *Palakovic v. Wetzel*, 854 F.3d 209, 225-26 (3d Cir. 2017). *See also Johnston v. Wetzel*, 431 F.Supp.3d 666, 677 (W.D. Pa. 2019) ("The detrimental effects of prolonged solitary confinement on prisoners have been well documented."). This is because prolonged solitary confinement may deprive an inmate of such basic human needs as "exercise, sleep, social contact and interaction, and environmental stimulation." *Johnston*, 431 F.Supp.3d at 678 (citing *Wilson v. Seiter*, 501 U.S. 294, 304 (1991)).

On the other hand, reasonable periods of isolation "may be a necessary tool of prison discipline." *Johnson v. Wetzel*, 209 F.Supp.3d 766, 777 (M.D. Pa. 2016) (citing *Young v. Quinlan*, 960 F.2d 351, 364 (3d Cir. 1992)). *See also Johnston*, 431 F.Supp.3d at 679 (noting that "solitary confinement does not, in itself, violate the Constitution") (internal quotation omitted). In determining whether a particular confinement violates the constitution, courts look to both the duration of the solitary confinement and the unique conditions of that confinement. *See Wayne v. Clark*, 2022 WL 17993131, at *8 (E.D. Pa. Dec. 29, 2022) (evaluating the "conditions of confinement taken together with the length of [the inmate's] placement"). This is

a totality of the circumstances analysis. *McClure v. Haste*, 820 Fed. Appx. 125, 128 (3d Cir. 2020). Among the most common factors identified by courts in this Circuit are: the amount of time the inmate is confined in his cell each day; the size of the cell; the extent to which daily activities are confined to the cell; how often the inmate can leave the cell for activities such as exercise and showering; whether the inmate can entertain physical visitors or use a telephone or tablet to contact friends and family; whether the inmate can move through program phases with good behavior to earn more privileges; and the extent to which the inmate has access to adequate medical and mental health care. *See, e.g.*, *Porter v. Pennsylvania Department of Corrections*, 974 F.3d 431, 441 (3d Cir. 2020); *Peterkin v. Jeffes*, 855 F.2d 1021, 1022 (3d Cir. 1988); *Batchelor v. Little*, 2022 WL 16749039 (E.D. Pa. Nov. 7, 2022).

In dismissing Blount's original pleading, the Court noted that he had failed to allege such basic facts as "the duration of his stay in the IMU, the restrictions applicable to inmates in that unit, the privileges denied inmates in that unit, the physical conditions of his confinement, and whether he has been able to successfully advance to less restrictive phases of the program through compliance and good behavior." ECF No. 27. His latest pleading fills in many of these gaps. Blount entered the IMU program on November 23, 2021, and has remained there ever since. While in the IMU, he spends approximately 22 hours per day alone in his cell. His cell is artificially illuminated 24 hours per day and contains nothing but a bed, desk, and toilet. He eats meals alone in his cell and is generally denied most normal human interactions, including the ability to talk to other inmates. He cannot participate in educational, vocational, rehabilitative, or religious programming, and is generally deprived of mental or physical stimulation. He is not permitted in-person physical visitations, although he is able to socialize with his family through video calls. It does not appear that he has been denied access to medical or mental health care.

Finally, while it is not clear which phase of the program he is currently in, Blount acknowledges that the IMU program has six progressive phases through which he can advance by demonstrating program compliance and good behavior.

Viewing these allegations in the light most favorable to Blount, the Court finds that he has pleaded "a combination of conditions that taken as a whole, may represent an Eighth Amendment claim." *Bertolette v. Little*, 2023 WL 9100642, at *8 (W.D. Pa. Oct. 26, 2023). Several courts have recently held that similar conditions, taken together, "are equivalent to solitary confinement." *Williams v. Stickney*, 2023 WL 5351950, at *6 (citing *Wayne v. Clark*, 2022 WL 17993131, at *5 (E.D. Pa. Dec. 29, 2022)); *Bertolette*, 2023 WL 9100642, at *8 (finding that nearly identical allegations to those in the instant case were sufficient, at least at the motion to dismiss stage, to plead an objectively serious constitutional deprivation). While placement in solitary confinement or the RRL "alone does not violate the Eighth Amendment," *Williams v. Armstrong*, 566 Fed. Appx. 106, 109 (3d Cir. 2014), Blount alleges that he has been in the IMU for almost three years with no end in sight under conditions that cause him serious mental and physical harm. Whether the conditions in the IMU are indeed as severe as described by Blount – and whether specific conduct by the Defendants amounted to deliberate indifference to that harm[2] – are questions best explored on a fully developed record. Defendants' motion to dismiss as to Blount's Eighth Amendment claim will be denied.

B. Due process

The Fourteenth Amendment to the United States Constitution provides that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law." The United

---

[2] Construing Blount's allegations liberally, it appears that each of the Defendants is involved in the ongoing reviews of Blount's placement and has been made aware of his allegations of mental and physical harm. At this stage in the proceedings, this is sufficient to allege personal involvement.

States Supreme Court has mandated a two-part analysis of Fourteenth Amendment procedural due process claims. *Ingraham v. Wright*, 430 U.S. 651, 672 (1977). First, the reviewing court must determine "whether the asserted individual interests are encompassed within the . . . protection of 'life, liberty or property.'" *Id.* If a protected interest is implicated, the court must "decide what procedures constitute 'due process of law.'" *Id.* If no protected interest is implicated, however, then "it is unnecessary to analyze what procedures were followed when an alleged deprivation of an interest occurred." *Harris v. Hines*, 2017 WL 4119743, at *5 (M.D. Pa. Sept. 18, 2017).

In *Bowen v. Ryan*, 248 Fed. Appx. 302 (3d Cir. 2007), the Court of Appeals for the Third Circuit considered and rejected a due process challenge to the precise same procedures at issue here. After noting that the plaintiff's placement in administrative custody for twenty years clearly implicated a liberty interest protected by the Fourteenth Amendment, the Court held that "the procedures provided by the Pennsylvania Department of Corrections" in the context of RRL placement "satisfy the minimal constitutional standards for due process." *Id.* at 304. As in the instant case, those procedures included assessment by the PRC every 90 days and an annual review of the plaintiff's status. *Id.* Noting that "the PRC [had] the power to recommend release to an official with the power to order it," the Court concluded that the "initial opportunity to be heard" and "periodic review" afforded to the inmate satisfied due process. *Id.*

The precise same RRL procedures are at issue here. Thus, to the extent that Blount alleges that those procedures are unconstitutional on their face, *Bowen* forecloses his claim. *See Harris v. Little*, 2023 WL 4669024, at *3 (E.D. Pa. July 20, 2023) (noting that courts in the Third Circuit have upheld "the exact same RRL policy" on several occasions) (citing *Bowen*, 248 Fed. Appx. at 304).

Critically, however, Blount's claims extend beyond the face of the policy. While he concedes that his status is reviewed by the PRC every 90 days, he maintains that those reviews are "perfunctory in nature" and that he "has never attended a PRC review where he was permitted or otherwise able to present his views, advocate on his own behalf, or otherwise contest his RRL status." ECF No. 30 ¶¶ 41, 46-47. Among other things, he alleges that that the PRC "does not consider any mental health concerns that plaintiff has raised on multiple occasions during the reviews," refuses to document his concerns in writing, "does not consider the duration of confinement" or "address the mental and physical harm that plaintiff has suffered due to the duration of his confinement," and ultimately evaluates Blount's continued placement "without any real consideration of [his] circumstances." ECF No. 30 ¶¶ 41-43. He also contends that the PRC's reports "are routinely filed with incorrect, incomplete, and non-relevant remarks" and leave some sections "totally blank." *Id.* ¶ 43. Finally, he avers that the PRC "never documents" his mental and physical health concerns and issues generic recommendations such as "continue status" without providing him with a meaningful explanation for the decision. *Id.* ¶ 45.

The plaintiff in *Bowen* presented a similar argument, arguing that his PRC reviews were "rote or meaningless." *Bowen*, 248 Fed. Appx. at 304. The Court of Appeals rejected that argument based on the "conclusory" nature of his allegations. *Id.* at 304-05. *See also Reaves v. Rossman*, 2022 WL 18539772, at *7 (recommending dismissal where plaintiff alleged "in conclusory fashion only" that he had been denied meaningful review). In contrast, courts have permitted due process claims based on a failure to follow RRL procedures to proceed when supported by detailed and specific factual allegations. In *Harris*, for example, the plaintiffs alleged that the PRC "[did] not follow the proper guidelines or perform the required reviews

under the [RRL] policy" and "ignore[d] the procedural safeguards and manipulate[d] the system in order to keep Plaintiffs in solitary confinement indefinitely and without reason." *Harris*, 2023 WL 4669024, at *3. The court permitted plaintiffs' claims to proceed to discovery "to the extent that they allege Defendants administer the RRL policy in an 'unofficial' way that violates their constitutional rights." *Id*. at *4 (noting that "[w]hether the policy was followed as it should be [was an] issue of fact"). Other courts have reached the same conclusion. *See, e.g., Roten v. Little*, 2024 WL 1514182, at *13 (W.D. Pa. Apr. 8, 2024) (allegation that plaintiff was placed in the IMU "with no advance notice or any ability to be heard or challenge, and that his 'periodic reviews are perfunctory and meaningless'" was sufficient to proceed to discovery); *Wayne v. Clark*, 2022 WL 17993131, at *8 (E.D. Pa. Dec. 29, 2022) (allegation that PRC conducted irregular and perfunctory reviews without notice and failed to provide specific reasoning or grounds for decisions was sufficient to survive motion to dismiss); *Johnston v. Wetzel*, 431 F.Supp.3d 666, 684 (denying summary judgment because "the record [fell] short of establishing as a matter of law that [plaintiff's] protracted solitary confinement received meaningful review" and, consequently, "a jury could reasonably find that the reviews that occurred were pro forma and meaningless.")

On balance, the Court finds Blount's allegations more akin to those in *Harris*, *Roten*, *Wayne*, and *Johnston*. Rather than simply labeling the PRC reviews as perfunctory, Blount has alleged specific facts suggesting that the PRC rarely discussed his RRL status during reviews, disregarded his mental and health concerns, failed to provide him with an opportunity to challenge his status or advocate on his own behalf, and issued generic and conclusory explanations in support of its decisions. These allegations are sufficient to survive dismissal at the Rule 12(b)(6) stage.

V.      Conclusion

For the foregoing reasons, Defendants' motion to dismiss [ECF No. 31] is denied.

DATED this 4th day of June, 2024.

BY THE COURT:

RICHARD A. LANZILLO
CHIEF UNITED STATES MAGISTRATE JUDGE